STATE OF IOWA V. JOHN DONALD RANKIN, Appellant.

**Murder:** EVIDENCE. In this prosecution for infanticide, the evidence is reviewed and it is held that the question of defendant's guilt was for the jury.

**Same:** CREDIBILITY OF WITNESSES. The credibility of witnesses is a matter for the determination of the jury.

**Same:** INDICTMENT: SPECIFIC INTENT. An indictment which fails to charge a specific intent to kill will not authorize prosecution for murder in the first degree.

**Same:** INDICTMENT: VENUE. An indictment must connect every material fact with the venue, and for that purpose the words "then and there" are often used in connection with a description of the offense, but are so employed with reference to a time and place previously mentioned. And where, as in this case, the indictment clearly charged the crime of killing to have been committed in a certain county, and the descriptive allegations were pleaded in the same connection, it was not necessary to again state that the acts constituting the crime were then and there committed.

**Same:** STATUTES. Our statutes with reference to indictments are intended to obviate the technical niceties of criminal pleading at common law, and yet they require that the material facts be so alleged as to clearly inform the accused of the particular crime charged.

**Same:** INDICTMENT: SUFFICIENCY. The charge in the indictment in this case that defendant did "kill" the infant in question is an allegation of fact and not a conclusion, as it might have been had the word murder been used instead of kill. The indictment is held sufficient to charge murder in the second degree.

Same: INSTRUCTIONS: INCLUDED OFFENSES. Where, as in this prose-
cution, there was evidence from which the jury might have found
that although the accused unlawfully took possession of the child
he did not actually kill it, and there was no direct evidence of
violence sufficient to cause death, the submission of included of-
fenses of a lesser degree than manslaughter was proper.

Appeal from Dickinson District Court.—HON. D. F.
COYLE, Judge.

WEDNESDAY, APRIL 5, 1911.

THE defendant was accused of murder in the second
degree, and convicted of assault with intent to commit
murder. He appeals.—Affirmed.

George A. Heald, for appellant.

H. W. Byers, Attorney-General, and Charles W. Lyon,
Assistant Attorney-General, for the state.

LADD, J.—I. The defendant is accused of killing a
newly born child, to which Jessie Olson had given birth in
the afternoon of June 9, 1909. Two days previous de-
1. MURDER: fendant accompanied this woman and Mary
evidence. Roth when they rented a cottage near the
shore of West Okoboji Lake, a short distance north of
Arnold's Park, and the three occupied it. The women were
prostitutes, and he their pimp. Jessie testified that she
gave birth to a child on June 9 at about four o'clock in
the afternoon, when she lost consciousness, and did not re-
gain it until late in the evening after she had been removed
to a bed in the second story. Mary testified that defend-
ant was with Jessie when the child was born; that imme-
diately thereafter he removed her to the bed upstairs,
and placed a male child near the foot of the bed; that she
heard it cry and saw its eyes open and fingers move;

that in about a half hour he threw about it some clothes, placed it in a pillow slip, and deposited that in the corner of the room, and shortly after dark carried it out. Their story was strongly corroborated by other evidence, but somewhat weakened by having made affidavits shortly after the alleged occurrence in direct conflict therewith. Defendant denied any knowledge of the birth of a child, but an examination of the entire record has convinced us otherwise, and that the only really doubtful issue related to its disposition. Mary testified that defendant told her he threw it into the lake, and on June 16th a newly born male baby was found on the lake shore about eighteen inches from the water and not far from the cottage. An examination of its head indicated that it had been crushed. A pillow slip was found nearby. A witness related that defendant had told him that Mary Roth handed him something in a pillow slip, and told him to throw it in the lake. Both girls testified to defendant having threatened them while in jail if they would not aid him. Shortly after the body was found, Mary made an affidavit consistent with the testimony given at the trial, but later executed one to the contrary. Either defendant or Mary Roth must have disposed of the child. There was no evidence that the latter did so, and we are of the opinion that whether its life was ended by defendant was fairly for the jury.

As contended, the character of the state's main witness was such as to cast doubt on her credibility. This also was true of defendant. But the depravity of witnesses ought not to preclude the prosecution of crime. It is possible for such witnesses to tell the truth and determine whether they did so is the province of the jury. The verdict ought not be disturbed.

2. SAME: credibility of witnesses.

II. The indictment as amended was in the language following: "The grand jury of the county of Dickinson, in the name and by the authority of the State of Iowa,

accuses John Donald Ranken of the crime of murder, com-

3. SAME:
   indictment:
   specific
   intent.

mitted as follows: The said John Donald Ranken on or about the 9th day of June, in the year of our Lord one thousand nine hundred and nine, in the county aforesaid, did wilfully, feloniously, deliberately, premeditatedly, and with malice aforethought kill one certain infant, the child lately born of one Jessie Olson, being a human being (whose name is unknown to this grand jury), by crushing the head of said infant in a manner and by means unknown to this grand jury, thereby causing the death of the said infant, contrary to the statutes in such case made and provided, and against the peace and dignity of the state of Iowa." Inasmuch as the specific intent to kill was not alleged, the indictment was construed to charge murder in the second degree. See *State v. McCormick*, 27 Iowa, 402; *State v. Andrews*, 84 Iowa, 88.

But appellant contends that it does not allege facts constituting that crime or any included offense. First, it is said that the venue is not laid therein. The allegation is

4. SAME:
   indictment:
   venue.

that defendant "in the county aforesaid" did the act charged; Dickinson County being the county previously named. The language employed follows the form set out in section 5280 of the Code. Manifestly the allegation was that defendant killed the infant in Dickinson County. It is suggested, however, that, as this was done by crushing the head, the crushing might have been done elsewhere, as in Minnesota, and thereafter the child brought into Dickinson County and there have died. The ready answer is that something more than dying in the county is alleged; i. e., the act causing the death, the killing, and the reference to crushing the head is merely descriptive of the mode or manner of committing the act. True, the words, "then and there," do not precede the word "crushing" as is the usual practice in describing the manner of committing the offense, but in such

connection these words are employed only as referring to a time and place previously mentioned. *State v. Luke,* 104 Mo. 563; *State v. Cotton,* 24 N. H. 143. To avoid more specific repetition of the time and place in alleging the several material facts constituting the crime being charged, the words "then and there" are inserted for "it is undoubtedly a rule of criminal pleading that every material fact must be alleged with the venue and be charged as done at the same time." *Turns v. Commonwealth,* 6 Metc. (Mass..) 224. So they are not essential in this indictment, unless we shall reach the conclusion that the clause describing the manner of killing the infant should have been charged specifically as the act constituting the offense; i. e., that, even though the killing is charged as being with malice aforethought, the crushing should also have been alleged to have been with like malice. The facts constituting the offense must be pleaded, and, were the clause with reference to crushing the head a separate statement of fact, there would be ground for appellant's criticism, but, as the act alleged was the killing with malice aforethought and the crushing of the head by way of describing the manner of such act to have inserted "then and there with malice aforethought" before the word "crushing" in the indictment, would have been nothing less than unnecessary repetition.

All essential to constitute a good indictment is "a statement of facts constituting the offense in ordinary and concise language without repetition and in such manner 5. Same: ⠀as to enable a person of common under-statutes.⠀standing to know what is intended." Sections 5280, 5289, Code. Another section (5282) required the indictment to be "direct and certain as regards the particular circumstances of the offense charged when they are necessary to constitute a complete offense." These and other sections of the same chapter were intended to obviate the technical niceties of the common law through

which guilty persons escaped the just penalties of crime and should be so construed as to effectuate their design, and yet exact such specification of facts as will constitute the offense and so individuate it as will clearly apprise the accused of the particular crime intended. In *State v. Stanley*, 33 Iowa, 526, the criticism of the indictment was that the killing was not charged to have been with malice aforethought, and it was held that, as the act and intent of the prisoner were sufficiently stated and the result recited, this was all that was required. Under modern statutes in England and in many states, it is sufficient to allege the killing without stating the manner. 3 Russell on Crimes, 145. Section 1, McClain's Criminal Law, section 382 et seq.; *Redd v. State*, 69 Ala. 255. See form in Kelly on Criminal Law & Pro. section 445.

The charge that defendant did kill the infant is of a fact and not a conclusion as it might have been had the word "murder" been inserted instead of "kill." See *State v. McPherson*, 114 Iowa, 493. Murder

6. SAME:
indictment:
sufficiency.

includes several elements, while killing is the mere taking of life, and may or may not constitute murder or crime even. The indictment was sufficient to charge murder in the second degree.

III. Exception is taken to the submission to the jury of defendant's guilt of the included offenses. There was no direct evidence of violence to the child necessarily

7. SAME:
instructions:
included
offenses.

sufficient to cause death. Defendant might have taken it from the foot of the bed or have wrapped it with clothes, and put it in the pillow slip, or have placed it in the corner of the room, or even have carried it from the room without killing it. What happened to it thereafter appeared not only from evidence of statements which he denied and the discovery of the body under circumstances tending to identify it as that of Jessie Olson's child. If the evidence of his al-

leged admissions were rejected as the jury might have done, there was room for the conclusion that, though defendant had seized the child with unlawful intent, he may not have terminated its life. We are not saying that this were probable, but that it was possible, and for this reason the court rightly submitted to the jury whether defendant by his own act took the life of the infant, and, if not, whether he merely laid hands on it unlawfully, thereby committing one of the offenses included in the indictment of lesser degree than manslaughter.

The record is without error, and the judgment is *affirmed.*