KANSAS CITY v. MARSH OIL COMPANY, *Appellant.*

In Banc, July 6, 1897.

1. **Exercise of Eminent Domain by Certain Cities.** The right of eminent domain is conferred by the State, through its Constitution, on cities of one hundred thousand inhabitants, and an enabling act by the General Assembly is not necessary before such cities can exercise such right. The sections of the charter of Kansas City providing for the purchase or condemnation of land for park purposes, in so far as it is in harmony with the limitations imposed by the Constitution, give to the city the right to exercise eminent domain; and proceedings in accordance therewith to widen a street are valid.

2. **General and Special Charters.** Those provisions of the Constitution requiring an enabling act of the legislature before cities belonging to a certain class can exercise the right of eminent domain, must yield to other provisions of the Constitution which confer upon cities of one hundred thousand inhabitants the power to adopt by a certain vote charters which may include among other provisions authority in such cities to exercise the right of eminent domain. The legislature has no power to curtail the right given to a city by these sections of the Constitution, nor is the exercise of such right by the adoption of the proper charter in conflict with other provisions of the Constitution which provide for a general charter created by the legislature for all cities of a class, the Constitution providing that the special charter when adopted by the city "shall supersede any existing charter."

3. **Parks:** CONDEMNATION: BOARD OF FREEHOLDERS. The Constitution is not violated by a provision of the charter of Kansas City which provides that the damages for taking property for boulevards shall be ascertained by a board to consist of six freeholders.

4. ———: ———: APPOINTMENT OF COMMISSIONERS BY CIRCUIT COURT: JURY TRIAL. Nor is the Constitution violated because such charter confers on the circuit court the jurisdiction to appoint commissioners to assess the compensation and damages, and to award a jury trial if demanded, and to make all orders and judgments necessary for the appropriation of real estate to public use for parks or boulevards.

5. Practice: EXERCISE OF EMINENT DOMAIN. The exercise of eminent domain by cities is not regulated by code practice in this State, but by special provisions of charters.

6. ———: ATTORNEY FOR PARK BOARD: CONDEMNATION PROCEEDINGS: EXAMINATIONS BY PRIVATE CITIZEN. There is nothing improper in the attorney of a park board appearing at the trial as attorney for the city in a proceeding to condemn land for park purposes, nor in permitting a private citizen, who has property to be taken and assessed in the same proceeding, to be present and ascertain upon what principles other property was to be assessed.

*Appeal from Jackson Circuit Court.*—HON. CHARLES L. DOBSON, Judge.

AFFIRMED.

*Frank Titus* for appellant.

(1) The legislative power in Missouri is vested in the General Assembly, and can not be delegated to or exercised by the people. *State ex rel. Maggard v. Pond,* 93 Mo. 632; *State v. Field,* 17 Mo. 529; *Lammert v. Lidwell,* 62 Mo. 191; *State ex rel. v. Francis,* 95 Mo. 49; *State v. City of Orange,* 36 Atl. Rep. 707. (2) Kansas City is not a "political subdivision" of this State, as is the city of St. Louis. *Kansas City v. Neal,* 122 Mo. 232; *St. Louis v. Robinson,* 55 Mo. App. 246; *St. Charles v. Hackman,* 133 Mo. 641. (3) The "powers" of cities in Missouri must be defined by general law. Const. Mo., art. 9, sec. 7. (4) The constitutional privilege of creating a charter for the administration of the purely local affairs of its inhabitants excludes Kansas City from the exercise of that law-making power vested in the legislature alone. *Kansas City v.*

*Neal*, 122 Mo. 234; *State ex rel. v. St. Louis County. Court*, 34 Mo. 546; *Reardon v. St. Louis County*, 36 Mo. 560; *Jefferson Co. v. St. Louis Co.*, 113 Mo. 619. (5) The unlimited and unrestrained power of eminent domain is neither essential to nor inherent in a municipal corporation. *Davies v. Los Angeles*, 86 Cal. 37; Lewis, Em. Domain, sec. 240; *Minturn v. Larue*, 23 Howard, 435; *St. Louis v. Bell Telephone Co.*, 96 Mo. 623; *Railroad v. Canal Com.*, 21 Pa. St. 9; *Allen v. Jones*, 47 Ind. 439. (6) The act must be considered as altogether *ultra vires* and therefore void. Cooley, Const. Lim. [5 Ed.] 211; *Tacoma Gas Co. v. City*, 44 Pac. Rep. 655; *Ottawa v. Cary*, 108 U. S. 110; Black on Interpretation of Law, 317; *Paine v. Spratley*, 5 Kan. 525; Black, Const. Law, 381; *Touchard v. Touchard*, 5 Cal. 307; *Meriwether v. Garrett*, 102 U. S. 511; *Philadelphia v. Fox*, 64 Pa. St. 169. (7) All statutes authorizing the appropriation of private property for public use must be strictly construed. *Thompson v. Railroad*, 110 Mo. 153; *Railroad v. Clark*, 119 Mo. 357. (8) The legislature alone has the power to determine when the power of eminent domain shall be called into exercise. *Stamford Water Co. v. Stanley*, 39 Hun. 428; *Stockton County v. Stockton*, 41 Cal. 188; *Smeaton v. Martin*, 57 Wis. 372; *Olmstead v. Morris Aqueduct*, 46 N. J. Law, 499; *Dingley v. Boston*, 100 Mass. 558; *Varick v. Smith*, 5 Paige, 137. (9) It is *ultra vires* on the part of the people of Kansas City to enact a valid law regulating the practice, procedure and jurisdiction of circuit courts in judicial proceedings affecting citizens of the State; changing the methods established by general law of obtaining, rendering, and enforcing judgments; changing the law relative to real estate and the title thereto, as is attempted by the charter amendment. *Snoddy v. Bolen*, 122 Mo. 479; *Thomas v. Hunt*, 134 Mo. 392; R. S. 1889, sec. 8833; *State ex rel. v. Field*,

99 Mo. 352; *Kansas City v. Scarritt*, 127 Mo. 642; *Council v. Fowler*, 25 S. W. Rep. 900; *St. Louis v. Allen*, 13 Mo. 400; *Morrison v. Bachert*, 112 Pa. St. 329; *Town v. Baylies*, 19 Iowa, 43; *Strange v. Dubuque*, 62 Iowa, 305; *Hixon v. Burson*, 43 N. W. Rep. 1000; *Chalfant v. Edwards*, 33 N. W. Rep. 1048; *Gas Co. v. Electric Co.*, 44 Pac. Rep. 655; *State v. Court*, 34 Pac. Rep. 1072; *State ex rel. v. Davis*, 44 N. E. Rep. 511; *Hill v. Memphis*, 134 U. S. 203; *Brenhan v. Bank*, 144 U. S. 173; *State v. Walsh*, 136 Mo. 400; *Commonwealth v. Turner*, 1 Cush. 495; *Williams v. Davison*, 43 Tex. 34; *Mather v. Ottawa*, 114 Ill. 664; *Philadelphia v. Fox*, 64 Pa. St. 169; *Ottawa v. Carey*, 108 U. S. 110; *Hodges v. Buffalo*, 2 Denio, 110.

*C. O. Tichenor* for respondent.

(1) If a party can have imaginary rulings and imaginary exceptions thereto, such exceptions must be saved by a bill of exceptions. *Nichols v. Stevens*, 123 Mo. 119; *State v. Smith*, 114 Mo. 407; *Bray v. Kremp*, 113 Mo. 552. (2) The eleventh ground for a new trial is this: "Because of newly discovered evidence regarding values of land testified to by witnesses." It was put in the motion after it was filed, and after the four days had passed. The court had no power to grant this privilege. *State v. Brooks*, 92 Mo. 5; *State v. Dusenberry*, 112 Mo. 277. (3) Counsel claims, as we understand his "brochure" on eminent domain, that Kansas City under its charter is without this right. If so, St. Louis is and has been since October, 1876, in the same helpless condition. *Lecomb v. Railroad*, 23 Wall. 118; *U. S. v. Railroad*, 17 Wall. 329; *St. Louis v. Boffinger*, 19 Mo. 13; *Taylor v. City*, 22 Mo. 105. (4) That Kansas City has this right, this court has declared time and again in well considered

cases. *Kansas City v. Vineyard*, 128 Mo. 75; *Kansas City v. Smart*, 128 Mo. 291. (5) This is a matter which must be regulated by the charter itself. *Kansas City ex rel. v. Scarritt*, 127 Mo. 651; *Kansas City v. Ward*, 35 S. W. Rep. 600. (6) It is said that the charter of Kansas City seeks to regulate the practice of the courts. This is not so. *Musick v. Railroad*, 114 Mo. 309; *City of Edina v. Shoot*, 129 Mo. 354; *City v. Butterfield*, 89 Mo. 646; *Leonard v. Sparks*, 117 Mo. 108.

*D. J. Haff* and *C. S. Palmer* also for respondent.

(1) The power of eminent domain, as assumed and exercised by respondent, Kansas City in this case, is conferred by its charter under authority of article 9 of the Constitution of the State of Missouri and the enabling act of the legislature passed in pursuance thereof, and is not *ultra vires*. Laws of Missouri 1887, p. 42; Charter of Kansas City 1889, article 1, sec. 1; article 8 entire; article 10, sec. 7; amended article 10, sec. 7, of Charter of Kansas City, adopted June 6, 1895. (2) The amended article 10 of the charter is not open to the objection that it "regulates the practice, procedure and jurisdiction of circuit courts in judicial proceedings affecting the balance of the State," or changes "the methods established by the general law of obtaining, rendering and enforcing judgments, and changing the law relative to real estate and the title thereto," as contended by appellant. It simply confers a special jurisdiction upon the circuit court of Jackson county for a specific municipal purpose, which is a power fairly within the general grant of power to Kansas City to create for itself a charter conferred upon the city by section 16, of article 9, of the Constitution. *City of St. Louis v.*

*Gleason*, 93 Mo. 33; *Kansas City v. Ward*, 35 S. W. Rep. 600; *State ex rel. v. Field*, 99 Mo. 352; *Kansas City v. Scarritt*, 127 Mo. 642.

GANTT, J.—This is an appeal from the judgment of the circuit court of Jackson county in a proceeding instituted and prosecuted to condemn real estate to widen a street, under and by authority of article 10 of the charter of Kansas City, as amended June 6, 1895, in the manner provided by section 16, of article 9, of the Constitution of Missouri, authorizing any city having a population of more than one hundred thousand inhabitants to frame a charter for its own government, and thereafter amend the same by a proposal therefor made by the law making authority of such city, and duly published and accepted by a three fifths vote of the qualified voters voting at a general or special election "and not otherwise."

It was begun in the circuit court of Jackson county as provided by said charter amendment, by the filing of a certified copy of an ordinance of Kansas City, duly and legally passed, upon the recommendation of its board of park commissioners, selecting and designating certain lands for a boulevard as shown by a map filed by the city engineer with said park commissioners.

Article 10 of the charter of Kansas City, as amended, provides that if any incorporated company shall be entitled to a trial of its claim for land condemned or damaged by a common law jury of twelve men, it shall have the same by filing a petition therefor prior to the day set for the hearing and impaneling of a jury of freeholders. Appellant being a corporation demanded a jury of twelve which the court accorded to it. The jury estimated its damage at $11,000. In due time it filed a motion for new trial

and in arrest of judgment and after the expiration of four days offered to file a supplementary motion for new trial to which the city objected, but which the court permitted. Its motions were overruled, and the remainder of the case as to other property having been heard by the freeholders and the verdict of the common law jury having been adopted by said freeholders' jury, judgment of confirmation was entered May 22, 1896, and the Marsh Oil Company alone appeals to this court.

I. It is asserted, with much confidence, seemingly, by counsel for defendant, that the power of eminent domain as assumed and exercised by Kansas City in this and kindred cases is *ultra vires*, and therefore without the sanction of law. If defendant is right, his discovery is quite out of the ordinary, little less indeed than startling, in view of the great number of cases which have been considered by this court involving the exercise of eminent domain by the cities of St. Louis and Kansas City, because we think the two charters are strikingly alike in this feature of each.

Proceeding to an examination of this contention we find it asserted that "outside of this purported amendment (article 10) there is nothing in the charter itself warranting the exercise of the power of eminent domain by the common council," and "said amendment is void because *not* "in harmony with and subject to the Constitution and laws of Missouri."

The right of eminent domain is inherent in every government. In this State it is not conferred, but is limited by the Constitution. The necessity and expediency of exercising the right are political or legislative in character; its enforcement, judicial. It is not pretended that this power is inherent in a municipality created by the State. It must be conferred by the State. The city insists, however, that a municipal

corporation may be constitutionally invested with the power fo eminent domain subject to constitutional restrictions, and the State may delegate to the city the power to open and establish by compulsory acquisition or purchase, such streets or parks as the council may judge to be expedient or necessary and to widen or extend streets already laid. Of this there can no longer be a reasonable doubt in Missouri. Has the State conferred such power upon Kansas City?

Section 16 of article IX of the Constitution of Missouri, 1875, provides that "any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government consistent with and subject to the Constitution and laws of this State," and if such charter shall be adopted by four sevenths of the qualified voters of such city at a general or special election "it shall become the charter of such city and supersede any existing charter and amendments thereof." By the same article of the organic law of the State provision is made for amending said charter by a proposal therefor made by the law making authorities of the city and notice thereof, and by acceptance of such proposed amendments by three fifths of the qualified voters of said city at a general or special election *"and not otherwise."* No limitation is placed upon the character of the charter save and except that it shall always be in harmony with and subject to the Constitution and laws of the State.

Availing themselves of this constitutional offer, the citizens of Kansas City elected a board of thirteen freeholders which framed a charter for said city which was adopted April 8, 1889. Section 1 of article 1 of said charter empowers said Kansas City among other things, "to acquire and hold by gift, devise, purchase or by condemnation proceedings, lands and other property

for public use either within or beyond the corporate limits of said city, for waterworks to supply the city with water; for gas works or other means of lighting to supply the city with light, for *public parks*, cemeteries, penal institutions, sewers, or for any other public use, etc." Article 7 of the charter provides in detail the method of procedure for condemning lands "for establishing and opening any public park" "or for establishing, opening, widening, extending or altering any boulevard, street, avenue, alley," etc., and providing for the hearing and determination of such cases by the mayor's court and by the circuit court on appeal. Article 10 of the charter, as amended on June 6, 1895, by the qualified voters of said city, and an act of the legislature, approved March 10, 1887, provide the exclusive method of exercising this right to acquire land for boulevards and parks. So that the power to condemn lands for such purposes is plainly conferred by the Constitution and the charter framed in pursuance thereof.

The authorities cited by the learned counsel for defendant as to the necessity of a grant of power have no application to a city charter, which derives the power of condemnation of lands for public purposes directly from the organic law of the State in such unequivocal terms. It is not a matter of inference, but a direct grant of the necessary power. But that there might not be the semblance of a doubt of the power of the city to exercise eminent domain for such purposes the General Assembly of this State passed an enabling act which was approved March 10, 1887 (Laws of Mo. 1887, p. 42), by which cities of over one hundred thousand inhabitants were authorized to adopt charters, "for their own government," "in harmony with and subject to the Constitution and laws of this State." Section 52 of that act provides that it shall be lawful

for any such city to acquire and hold by gift, devise, purchase or *by the exercise of the power of eminent domain*, lands for public use, etc.

Upon legal principles it can not be seen what efficacy there was in this legislative act. The power with its limitations had been previously conferred by the people of the State and it was not within the power of the legislature to curtail it. That the people of Missouri in their sovereign capacity and by their organic law, could delegate to the people of a municipality this power to frame a charter for its own local government, as to matters falling properly within municipal regulation, we have no doubt whatever. Such a right is entirely in accord with the genius of our institutions, bringing the regulation and government of local affairs within the observation of those who are to be affected thereby, and at the same time preventing the officious and selfish intermeddling with the charters of our cities, without the knowledge of those whose rights are affected. This court, regarding the Constitution as supreme in authority, maintained the validity of the special charter adopted by Kansas City on April 8, 1889, in *State ex rel. Kansas City v. Field, Judge,* 99 Mo. 352. In that case Kansas City filed in the circuit court of Jackson county a certified copy of an ordinance to grade a designated street and asked the judge thereof to appoint commissioners to assess damages and benefits under article 8 of its special charter, framed by freeholders and adopted by virtue of section 16, article IX of the Constitution of this State. The circuit court declined to appoint said commissioners on the ground that said section 8 was in conflict with the laws of this State. Upon an application for *mandamus* this court held that the matter of assessing damages and regrading streets naturally fell within the domain of municipal government, and that the special charter must control in the

proceeding to assess damages and benefits and super-seded the general law of 1885 as amended in 1887 on that subject.

In *The City of St. Louis v. Gleason*, 15 Mo. App. 25, 93 Mo. 33, this question arose under the charter of St. Louis which was framed and adopted under the provisions of section 20, article IX of the Constitution, which permitted the adoption of the charter "in harmony with and subject to the Constitution and laws of Missouri," and when adopted *should supersede* the then charter of St. Louis and all amendments thereof, and it was held that the scheme and charter must be regarded in law as a grant from the State of equal dignity with a municipal charter conferred by an act of the legislature.

The learned counsel for defendant attempts to distinguish this case from *State v. Field, supra.* He says, "the question whether said article 8 contained a code of practice attempting to regulate judicial proceedings contrary to the laws governing State courts, was not mentioned." Counsel surely had not read that case closely or he would have discovered that the sole contention was whether the proceeding for condemnation should be regulated by article 8 of the charter, or by the general law governing the practice in such cases, and this court held the special charter must govern. So that we are brought back to the same contention in this case that was raised in that, and the answer must be that notwithstanding the policy of the State is to provide for the organization and classification of cities and towns by general laws, the people have made an exception to this general policy by permitting cities of over one hundred thousand inhabitants to frame their own charters, provided always they shall be consistent with and subject to the Constitution and laws of this State. The inquiry then is, whenever a charter so framed comes under judicial review, is it in har-

mony with and subject to the laws and Constitution of
the State? It is to be observed in this connection that
the permission to frame a charter necessarily carries
the privilege of providing a system different from that
adopted for the State at large, provided it shall not
override or collide with the constitutional guarantees
and restrictions, and shall not be out of harmony with
the general laws of the State. It must be borne in
mind that the grant of the right to frame a charter of
its own would have been utterly without force and
meaningless, if the convention which framed the Con-
stitution and the people who adopted it meant that
such a charter should be *in all respects exactly like the
general charters framed by the general statutes* for the
class to which it would have belonged but for that priv-
ilege. We are forbidden by the rules of fair construc-
tion to ascribe such a restricted meaning to words in
so important a document as the Constitution of the State.
As was said in *State v. Field, supra:* "Charters thus
adopted will of necessity be more or less at variance,
and that they will be unlike in many respects, is with-
in the contemplation of the Constitution." The Con-
stitution of the State is paramount and prohibits pri-
vate property from being taken or damaged for public
use without compensation. It provides, moreover, that
such compensation shall be ascertained by a jury or
board of commissioners of not less than three freehold-
ers. The charter amendment under consideration re-
quires the board to ascertain damages for taking or
damaging property for a boulevard to consist of six
freeholders, but in so doing it does not conflict with
the Constitution in the slightest degree. On the
contrary it seeks to execute every essential command
of the Constitution by providing for an ascertainment
of the damages before appropriating the land to public
use and obeys the Constitution in seeing that none but

freeholders serve on such commission, and not less than three constitute the board. Article II, section 21 of the Constitution does not require that these proceedings shall be by *general* law, but if it did, the Constitution also expressly permits the city to adopt a *special charter*, and it is not obnoxious to the charge that it is *special*, when a *general* law could have been made applicable, as the people have written the exception into the organic law themselves.

But it is also insisted that because the legislature had by a general law passed in 1885 and amended in 1887 (Acts 1885, p. 47; Acts 1887, p. 37; R. S. 1889, sec. 1815), provided a mode of procedure for condemnation of land for municipal purposes different from that adopted by the charter of 1889 and the amendment, article 10 of 1895, the latter must fall because they are unlike in some of their details. If this view can be maintained, it simply nullifies section 16 of article IX of the Constitution. But counsel by this contention begs the question. He ignores the foundation fact that the organic law conferred upon the municipality the power to adopt *the special charter*, and it was not restricted to the adoption of a method for condemning streets, alleys, parks, *et cetera*, already prescribed by the general statutes, but was unlimited save by the provision that it must be in harmony with the laws and Constitution of the State. Mere differences in detail do not show any want of harmony whatever. Every essential of the Constitution and every salutary principle of the statute is preserved. Thus the body of freeholders who estimate the damage, the saving of the right to a common law jury, the payment of the damages or compensation to the owner or into court for him before his proprietary rights are disturbed, are all preserved in the charter.

It was entirely competent for the city under this

constitutional authority to confer upon the circuit court the jurisdiction to appoint the commissioners to assess the compensation and damages, and to award a jury trial, if demanded within the provisions of the law, and to make all necessary orders and judgments; in a word, *to regulate* the exercise of this power conferred by the Constitution. Certainly there was no clashing with the general statutory practice by requiring the proceeding to be conducted in the circuit court which is clothed with jurisdiction by law over that class of cases. A constitutional provision authorizing a city like Kansas City or St. Louis to frame its own charter implies the power to adopt a complete and harmonious system of local municipal government. The necessity of power to open, extend, and widen streets being so obviously the function of municipal concern and regulation, only the most restricted and narrow construction would deny the city the right under the constitutional grant of providing a rational and just method of condemning lands for public streets and parks. The city had the same right to provide for the regulation of condemnation proceedings under the Constitution as it had to provide for other matters of purely municipal concern.

A charter is the organic law of a city in this State whether it emanate from the General Assembly, or is framed and adopted by the people of the municipality by authority of the Constitution. Being a law for the government of the municipality, it is binding upon all courts, and it violates no principle of our government to say that the courts, when called upon, must enforce these municipal laws unless they conflict with the Constitution, and are not in harmony with the Constitution and laws, and, as already said, mere differences in details do not render such laws inharmonious. So long as Kansas City, under its special charter, does not

invade the province of general legislation, or attempt to change the policy of the State as declared in her laws for the people at large, it will not be held to be out of harmony with such laws, notwithstanding the provisions of the special charter may be different from the general statutes prescribed for the government of other cities in their local affairs.

The charter provisions of St. Louis and Kansas. City as to condemnation proceedings have been so often before this court, and have never been held to be out of harmony with the Constitution and laws, that a declaration at this late day that said cities were without such a power, and that these charter provisions, in this respect, were *ultra vires*, would invite a flood of litigation. Fortunately we see no reason for doubting the correctness of *State ex rel. Kansas City v. Field*, 99 Mo. 352. We think it was properly ruled that the special charter superseded the general statutes where the two conflicted as to a mere municipal regulation, and we hold that condemnation proceedings to acquire lands for streets, parks, waterworks, sewers and the like, clearly fall within municipal regulation. It follows that notwithstanding the charter did not follow the civil practice as prescribed in the code of practice, it was not for that reason out of harmony with the Constitution or laws, and the special provisions thereof must control, and defendant has no just ground of complaint on that ground.

The amendment to the charter known as article 10 was adopted in strict compliance with the exclusive method pointed out by the Constitution and thereby became of equal binding authority with other portions of the charter, and dealt with a subject also within the domain of municipal government. *Kansas City v. Scarritt*, 127 Mo. 642; *Kansas City v. Ward*, 134 Mo. 172.

It is not open to the criticism that it attempts to regulate the practice, procedure, jurisdiction of the circuit courts, and changes the method of obtaining, rendering and enforcing judgments.   The exercise of eminent domain has never been regulated by the code practice in this State.   It has generally been governed by provisions, special to the different charters, prior to the Constitution of 1875.   The provisions of article 10 as amended is in substantial harmony with all the essential requirements of section 1815, Revised Statutes 1889; the said article 10 being somewhat more liberal in the notice required to be given the property owner, and awarding him six freeholders to assess his damages or compensation instead of three, but it is plain that no salutary principle of the general law on the subject is violated by the special charter, but the two are consistent within the meaning of the Constitution.  Neither section 1815, Revised Statutes 1889, nor article 10 has ever been deemed to conflict in the slightest with our civil code of practice.   Each provides for the exercise of a right which must be summary and expeditious to a more or less degree, and the code provisions cited by counsel have no sort of application.   We are not disposed to enter upon a discussion of each provision of the article and its supposed conflict with the general code of civil procedure.   It is plain that defendant has been accorded every Constitutional right of trial by jury, and all the errors of which it complains are before this court by an unquestioned right of appeal.

Article 10 of the charter as amended is not void. It is in harmony with the Constitution and general statutes of the State *in pari materia*.

II.   The claim that defendant was denied a separate trial because Mr. Haff, the special counsel for the park board, cross-examined witnesses, is wholly without merit.   Mr. Haff was to all intents an attorney of

the city and had a perfect right to appear in the case. Judge Brumback having property to be taken and assessed in this same proceeding, was properly permitted to be present and ascertain upon what principles other property was to be assessed.

III.   The objections to the ordinance number 6773 can not be sustained. The description of the property is set out with great particularity by reference to streets, lots, blocks, and the map filed by the engineer. The park districts are defined and their boundaries located by the charter amendment in question. This court will take *ex officio* notice thereof.   *Kansas v. Vineyard*, 128 Mo. 75.   The objection that the ordinance does not sufficiently prescribe the time and manner of assessments is best answered by the ordinance itself. Section 2 thereof provides that the special assessments shall be paid in one installment in time and manner as provided by section 21, article 10 of the amended charter of Kansas City for the payment of assessments made payable in one installment. Said section 21, article 10, ordains that assessments paid in one installment shall be paid without interest within sixty days after judgment of confirmation thereof and if not so paid shall bear interest at fifteen per cent per annum. The title is clearly expressed.   It is "to establish a boulevard along parts of Independence avenue, Grove street and other streets in Kansas City, Missouri."

IV.   The counter abstract of respondent sets forth all the objections and exceptions saved to evidence. The questions thus saved relate to interrogatories propounded by counsel for the city to defendant's experts. They fell clearly within the proper scope of legitimate cross-examination.   Evidence is of little value which can not stand this test.   The right to propound hypothetical questions to experts on cross-examination to test their knowledge can not be denied.

The remainder of this assignment is not open to review. It depends upon the claim that there was a stipulation that all evidence should be considered objected to and exceptions saved. That which is styled *an agreement* is as follows: "By Mr. Haff: Well, just consider everything I ask the witness and every other witness objected to for any and every reason that you can think of, and let us get along with this case." This court can not recognize in this statement a basis for convicting the circuit court of errors of which no claim whatever was made in its presence. Every court is entitled for its own protection to pass upon objections to evidence. It will not be charged up with a lot of absurd rulings which it never made. The practice is plain and easily observed. If counsel object to evidence it is his duty to state the grounds thereof and if the court thus advised overrules his objections he must at the time save his exceptions. That was not done in this case as to much of the evidence of which defendant complains, and consequently it is out of our power to aid it.

As to the newly discovered evidence upon which a new trial was sought, it was insufficient for the following reasons: *First*, the new evidence was simply to contradict a witness; *second*, if admitted, there is nothing to indicate that it would change the result; *third*, no diligence was shown, nor reason why the absent witness was not brought into court by appellant; *fourth*, there was no affidavit by anyone connected with or interested in appellant, simply the affidavit of the witness as to what he would swear to. *State v. Luke*, 104 Mo. 563; *State v. Myers*, 115 Mo. 394; *State v. Sansome*, 116 Mo. 1; *Mayor, etc., v. Burns*, 114 Mo. 426.

No substantial error having in our opinion been committed against the defendant, the judgment of the

circuit court is affirmed. BARCLAY, C. J., MACFARLANE, BURGESS, SHERWOOD, ROBINSON and BRACE, JJ., concur.