# HUMPHREY FULLERTON, Trustee, etc., Appellant, v. JAMES M. CARPENTER, Respondent.

### St. Louis Court of Appeals, December 9, 1902.

1. **Jury: COURT: EVIDENCE: PRACTICE, TRIAL: PRACTICE, AP-PELLATE.** The jury, or the court sitting as a jury, is the sole judge of the weight of the evidence, and their findings will not be reviewed on appeal, unless there is no substantial evidence to support the verdict or it is obvious that the verdict is the result of passion, prejudice or corruption.

2. **Objection to Admission of Evidence: PRACTICE, APPELLATE.** Unless the ground of an objection to the admission of evidence is specified when it is made, the objection will not be considered on appeal.

3. **Practice, Trial: INSTRUCTION: MOTION FOR NEW TRIAL: ERROR: ASSIGNMENT OF ERROR: PRACTICE, APPELLATE.** Where the attention of the trial court is not called to an instruction given by the court, in the motion for a new trial, plaintiff must be deemed to have waived his objection to it, and this assignment of error can not be considered by the appellate court.

4. **Evidence:** In the case at bar there is abundant evidence to support the verdict.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

AFFIRMED.

*Henry M. Post* for appellant.

(1)   Suit was brought by the principal—who was also owner of the land—against the broker, for $225 held back by him as commissions and the Court of Appeals held that the broker was entitled to his commissions out of the earnest money. The court said: "Plaintiff's counsel make the argument that, although a valid contract of sale was made by the defendant with Symmes, yet, if Symmes failed without any fault on the

part of the plaintiff to perform the contract, the defendants were not entitled to their commissions. This position is at war with the Missouri laws on the subject. The whole tenor of the decisions of both Courts of Appeals, and the Supreme Court, is to the effect that the real estate agent has performed his whole duty under the law, and is, therefore, entitled to his commissions, whenever he finds and produces a purchaser ready and willing to buy according to the terms agreed on; or when he procures a valid contract of purchase from a solvent buyer," citing Carpenter v. Rynders, 52 Mo. 278; Bailey v. Chapman, 41 Mo. 536; Love v. Owens, 31 Mo. App. 501; Gaty v. Foster, 18 Mo. App. 639; Nesbit v. Hesler, 49 Mo. 383; Hayden v. Grillo, 35 Mo. App. 653. "The agent in such a case is entitled to his commissions, though the trade was afterwards broken off on account of a defect in the seller's title." Collins v. Fowler, 8 Mo. App. 588; Love v. Owens, supra; Budd v. Teller, 52 Mo. 238. (2) There is a class of cases where, under the terms of the contract, the owner of the property had agreed to take certain steps to straighten or complete the title and failed to carry out his contract and by reason of his fault in failing to do so the deal falls through; in such cases the agent is held entitled to his fees. Phister v. Gove, 48 Mo. App. 455.

*T. K. Skinker* for respondent.

(1) The first assignment is that the "verdict and judgment are against the law." This is too indefinite. It did not indicate to the trial court, and does not indicate to this court, even in the most general way, in what the supposed violation of law consists. The trial court was entitled to have this distinctly pointed out, and this court will not review the action of that court, because that was not done. R. S. 1899, sec. 640. (2) In assigning errors in a motion for a new trial, "the appellant should put his finger upon the specific errors of which he complains." Huppert v. Weisgerber, 24 Mo. App. 95. "He must so definitely set out the rea-

sons as to direct the attention of that (the trial) court to the precise error of which complaint is made." Stone v. Wolfskill, 59 Mo. App. 441. (3) The appellate court will not review errors alleged to have been committed by the trial court in the progress of the trial, "unless the attention of that court is specifically called to the errors in a motion for new trial." Bollinger v. Carrier, 79 Mo. 318; Railroad v. Vivian, 33 Mo. App. 583.

BLAND, P. J.—The motion for new trial is as follows:

"Now comes Humphrey Fullerton, testamentary trustee, plaintiff in the above entitled cause, and moves the court to set aside its verdict and decree rendered in the above entitled cause heretofore, to-wit, on July 5, 1901, and grant him a rehearing and new trial. And as grounds for said motion plaintiff alleges the following:

"1. Said verdict and judgment are against the law.

"2. They are against the evidence.

"3. They are against the law and the evidence.

"4. They are against the weight of evidence.

"5. Said verdict and judgment should have been in favor of plaintiff and against defendant.

"6. The court erred in excluding proper evidence.

"7. The court erred in admitting improper evidence.

"8. It is admitted by the pleadings that defendant Carpenter was to be paid $2,500 commission for procuring a loan of $100,000. The evidence shows that said defendant as agent for plaintiff made offer to the St. Louis Trust Company of the mortgage on the McPherson tract of land belonging to the estate of J. S. Fullerton and referred to in the evidence, as security for the loan to be made by the St. Louis Trust Company to plaintiff; that said Carpenter made no further offer. The evidence shows that said offer was positively and finally refused by said trust company. The evidence

further shows: (a) That said loan was not given until an order and decree were entered by the St. Louis Circuit Court authorizing and empowering plaintiff, as trustee under the will of J. S. Fullerton, to give said mortgage: (b) That said order and decree were the *sine qua non* conditions for obtaining said loan, and without which said order and decree said loan would have been refused: (c) The evidence shows that all the negotiations and agreements relating to the procurement of said order and decree originated, and were carried on, by and between plaintiff and his attorney on the one part and the St. Louis Trust Company and its attorney on the other part after the offer of said Carpenter had failed, and wholly independent of said Carpenter; that he neither procured nor suggested the proceedings for obtaining said order and decree nor had he anything to do with the agreement compassing said proceedings and order and decree. Plaintiff was not bound, directly or by implication, under his contract with defendant to obtain said order and decree. If defendant failed to procure said loan, then under the case as made by the pleadings he was entitled to no compensation. The court should have found the above recited facts and conclusions by verdict and judgment for plaintiff. By its verdict and judgment for defendant it must have found to the contrary, and said verdict and judgment constituted manifest error for which plaintiff is entitled to rehearing and new trial of said cause.''

The first, second, third, fourth and fifth grounds of the motion amount to this, that the verdict is against the weight of the evidence and for that reason should have been for the plaintiff. The jury, or the court sitting as a jury, is the sole judge of the weight of the evidence and their findings will not be reviewed on appeal, unless there is no substantial evidence to support the verdict, or it is obvious that the verdict is the result of passion, prejudice or corruption. Culbertson v. Hill, 87 Mo. 553; Hull v. Railroad, 60 Mo. App. (K. C.) 593.

In respect to the sixth ground, ''that the court erred in excluding proper evidence,'' we find but one object-

ion made by plaintiff to the evidence offered by defendant. The bill of exceptions shows that the evidence was simply "objected to." No grounds for the objection were assigned nor was any exception saved to the ruling of the court on the objection. Unless the ground of an objection to the admission of evidence is specified when it was made, the objection will not be considered on appeal. Lumber Co. v. Rogers, 145 Mo. 445; Kansas City v. Oil Company, 140 Mo. 458.

In respect to the seventh ground, "that the court admitted improper evidence," the bill of exceptions fails to show that any evidence was admitted by the court to which plaintiff saved an exception.

Only one instruction was given. This was objected to when given, but the court's attention was not called to it in the motion for new trial. By not calling the attention of the court to the instruction in the motion for new trial plaintiff must be deemed to have waived his objection to it and this assignment of error can not be considered. State v. Nelson, 101 Mo. 477; State to use v. Fargo, 151 Mo. l. c. 285; Brady v. Connelly, 52 Mo. 19; Brown v. Mays, 80 Mo. App. (K. C.) 81; Roberts v. Boulton, 56 Mo. App. (St. L.) 405.

The other grounds set out in the motion are directed to the evidence and to the sufficiency of the evidence to support the verdict of the court. In this state of the record the only question open for review is whether or not there is substantial evidence to support the verdict.

The agreed facts are that Gen. J. S. Fullerton, in his lifetime, owned a lot on the corner of Seventh and Pine streets, in the city of St. Louis, and other real estate in said city; that in 1896 he had contracted for the erection of a twelve story brick, stone and iron building on the lot on Seventh and Pine streets and had placed a mortgage on the property for $225,000; that in the year 1897, when the building contracted for was about half completed Gen. Fullerton lost his life in a railroad accident. He had made a will in which the plaintiff, his brother, was named as executor and trustee. For

the preservation of the estate it was imperative that the Fullerton building should be completed, and the probate court of the city of St. Louis granted an order authorizing plaintiff, as executor, to finish it, but the estate had no funds available for the purpose.

The defendant, James M. Carpenter, was the agent of the estate at the time, for the collection of rents, etc., and was consulted by plaintiff and his attorney, Truman A. Post, Esq., in respect to raising a loan of $100,000 on the property of the estate, and suggested to defendant that his firm (James M. Carperter & Company) might advance the money on a blanket mortgage on all of the Fullerton real estate in the city of St. Louis. Carpenter thought he could negotiate the loan at six per cent if the plaintiff, as executor, could make a valid mortgage. Mr. Post assured him that the executor had the power, under the will, to make the mortgage and defendant agreed to undertake to negotiate the loan for a commission of two and one-half per cent, and it was agreed that Mr. Post should furnish Carpenter his opinion in writing that the plaintiff, as executor, had power under the will to mortgage the real estate. Mr. Post's opinion in writing was furnished on June 25, 1897, and Carpenter started out thus fortified to find some one who would loan the money ($100,000) on the security offered. After making several unsuccessful applications to other parties, Carpenter applied to the St. Louis Trust Company for the loan. The application, accompanied with Mr. Post's opinion, was submitted to its attorney, Mr. Stewart. Mr. Stewart procured a copy of Gen. Fullerton's will and after examining it was of the opinion that the executor did not have the power to make the proposed mortgage and so informed Carpenter and asked him to bring Mr. Post over and they would discuss the matter. Carpenter brought Post to the office of the St. Louis Trust Company, where Post and Stewart had an animated discussion about the matter, but Post was unable to convince Stewart that the executor had power to execute the mortgage. Subsequently other conferences were had, in respect to the

matter, between Post and Stewart. These conferences finally resulted in a petition in equity to the circuit court for authority of the executor to execute the mortgage and borrow the $100,000 for the purpose of finishing the Fullerton building. The prayer of the petition was granted and an appropriate decree was entered authorizing and empowering the executor to borrow the money of the St. Louis Trust Company and to mortgage the property as surety therefor, and this was done.

Stewart testified that when he examined the will, the application of Carpenter for the loan was declined, and that it was not taken up again until sometime afterwards, when, in a conversation with plaintiff, the matter was mentioned in discussing the condition of the estate, and then, on account of his acquaintance with and friendship for Gen. Fullerton in his lifetime and his sympathy for his minor daughter, he again took the matter up with Mr. Post with a view of devising some means whereby the loan could be made.

Carpenter testified, in effect, that the loan was not turned down by Stewart after he had examined the will and come to the conclusion that the executor had no power to make the mortgage, but the application for the loan was held in abeyance until some means could be devised whereby the executor might make a valid mortgage.

Carpenter continued to act as agent for the Fullerton estate for several years after the loan was made. When his agency was terminated by the plaintiff, Carpenter in his settlement with plaintiff, as executor of the estate, charged the estate with and retained $2,500 as commission for negotiating the loan of $100,000 with the St. Louis Trust Company. The suit is to recover this sum on the theory that Carpenter did not procure the loan.

The evidence is clear that the defendant found a party that was ready and willing to make the loan on the security offered, had the executor possessed the power to execute the mortgage that Carpenter was authorized to offer as security for the loan, and that the

only reason the loan was not made at the time was because the borrower was, in the opinion of Stewart, unable to make the security he proposed to give. We can see no difference in principle, as far as the broker is concerned, in a negotiation of this character, between an incapacity of the borrower to execute the mortgage offered as security and a want of title in him to the lands proposed to be mortgaged as security.

We do not understand from the contract, as testified to by all the parties, that Carpenter undertook to get the loan on Mr. Post's opinion that plaintiff had power as executor to make the mortgage, but that he undertook to procure the loan on the property when assured in writing by Mr. Post, plaintiff's attorney, that plaintiff could make the mortgage. This representation or assurance was not Carpenter's, but plaintiff's, made through his attorney. That this assurance failed to satisfy the lender, who was ready and willing to make the loan on a valid mortgage, was not the fault of Carpenter but the error (if error it was) of plaintiff's attorney for which defendant was not at all responsible and on account of which he should not lose his commission.

The evidence for defendant further shows that defendant was often consulted by plaintiff in respect to the loan while the equity case was pending in the circuit court and that, on account of his familiarity with the property and his superior knowledge of the value of such property in the city of St. Louis, his evidence was mainly relied upon by plaintiff to secure the necessary decree to authorize plaintiff to make the mortgage.

In our opinion there is abundant evidence in the record to support the verdict of the court, and the judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.