## MORROW v. KANSAS CITY, Appellant.

### In Banc, February 28, 1905.

1. **Legislative Power: How Limited.** The power of the General Assembly is plenary except where restricted by some constitutional prohibition.

2. ———: **Grant to City: Continuing One.** The power granted by the Constitution to a city of more than one hundred thousand inhabitants, to frame and adopt its own charter, being clearly a legislative one, is, in its nature, a continuing one, in the absence of a restriction in the Constitution, and there is no such restriction.

3. ———: ———: ———: **Succeeding Sessions.** Every succeeding Legislature possesses the same jurisdiction and power in reference to charters granted to a city that its predecessors did. Each succeeding session has the same power of repeal and modification that former ones had of enactment, no more, no less. And the same principle applies to the legislative power given a city to frame its own charter; that is a continuing power, and is not exhausted by a single exercise thereof.

4. ———: **Freeholders' Charter: May be Supplanted by New One.** The people of Kansas City, having once framed and adopted a freeholders' charter, may in the same way frame and adopt a new charter which supplants the former one. The power once exercised is not exhausted. Nor is it limited to amendments. It is a continuing power, and in the grant thereof a method is provided for obtaining a new charter, and a method for amendments, and the exercise of either does not destroy or exhaust the other.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

Reversed.

*R. J. Ingraham* and *J. J. Williams* for appellant.

(1) The power to make or grant a charter for a municipal corporation is a legislative power. Owen v. Baer, 154 Mo. 512; Sanders v. Railroad, 147 Mo. 426; State ex rel. v. Railroad, 151 Mo. 188; Cooley, Const. Lim. (7 Ed.), pp. 131, 261-2. (2) Prior to the adoption of the Constitution of 1875, this power was vested solely in the General Assembly of the State. It was not expressed in terms in the Constitutions of 1820 and 1865, but resulted from the fact that, being legislative in its nature, it belonged to the legislative branch of the government. Cooley, Const. Lim. (7 Ed.), p. 266; 1 Dill. Mun. Corp. (4 Ed.), sec. 54; Copeland v. St. Joseph, 126 Mo. 431. (3) By the Constitution of 1875 this power, which had theretofore existed in the Legislature, to frame charters of cities having over 100,000 inhabitants, was expressly taken away from that body and transferred to the people of such cities. The Con-

stitution of 1820 did not convey to the Legislature in terms the power to frame municipal charters. But, under a grant of general legislative power, the Legislature for over fifty years, uniformly, and with the approval of the courts, exercised the exclusive power to frame all such charters as a continuing power. Such was the law and usage when the Constitution of 1875 was framed. And its framers, by section 16, meant to and did take the power away from the Legislature, in specified cases, and vested it in the people of the city. Nothing in or between the lines of section 16 indicates any intention to change the nature or extent of the power. But its language clearly means that there should be a change in its repository—a change so complete that no other body but the people of the city can frame or amend it. It is still a legislative power. A detailed definition in the Constitution of its nature and extent was wholly unnecessary, because its continuous use for more than half a century in this State had demonstrated its nature and extent, which were known alike to the Constitution-framers and the people. The then existing law and usage were present in their minds when they framed it and voted on it. Sec. 16, art. 9, Const. 1875; Dill. Mun. Corp. (4 Ed.), sec. 85; State ex rel. v. Kansas City, 99 Mo. 352; Scarritt v. Kansas City, 127 Mo. 642; Oil Co. v. Kansas City, 140 Mo. 458; State ex rel. v. Railroad, 151 Mo. 162; St. Louis v. Fisher, 167 Mo. 660; see, also, cases under point 5. (4) The power was given in express terms— "to frame a charter." This power should be read and construed in the light of all preceding charters and in the light of the general legislation of the State and of the object of the people in erecting such municipalities. Dill. Mun. Corp. (4 Ed.), sec. 87. (5) Being of this legislative character, and expressed, it was "continuing" in its nature; that is, not to be understood as exhausted by the one exercise of it. It is not irrepealable, as it would not have been so if made by the Legis-

lature. Cooley, Const. Lim. (7 Ed.), p. 295; Reeves v. Anderson, 13 Wash. 17; Dill. Mun. Corp. (4 Ed.), secs. 686 and 780; Farrar v. St. Louis, 80 Mo. 379; McCormack v. Patchen, 53 Mo. 37; Hoffman v. St. Louis, 15 Mo. 652; Skinker v. Herman, 148 Mo. 355; Estes v. Owen, 90 Mo. 115; Gosley v. Georgetown, 6 Wheat. 593. This is always so unless the prohibition against continued exercise of it is expressed in the grant itself. In other words, such a limitation will not be implied. 1 Smith's Modern Law Mun. Corp., sec. 408. (6) The delegation of this legislative function to the people of these cities does not violate the general rule that legislative power cannot be delegated. Owen v. Baer, 154 Mo. 412. The people—the source of all constitutional power—may do this. Sanders v. Railroad, 147 Mo. 426. (7) The express power having been granted, and being "continuing," it always exists. When this power is exercised, and a new charter made, it is provided, by the organic law, that "it shall supersede any existing charter and amendments thereof." This is an express power to repeal the old charter. Sec. 16, art. 9, Const. 1875. (8) Respondent's position is based wholly upon "implication." He asks that a prohibition against a second exercise of this express power be implied, or read into the Constitution, and that the method of amendment be inferred to be the exclusive method of changing the charter. To support either implication would do violence to established rules of construction laid down by this court. See authorities under point 5. (9) If the power "to frame a charter" was exhausted by the one exercise of it, by the same reasoning the power to "amend" has been exhausted by "once amending" it. Both powers are granted in the same terms, and unless they are both of a "continuing nature," Kansas City is irrevocably tied to the present charter, without power to either frame a new one, or amend the old. It is to such startling and absurd ends

that the contention of respondent leads. Story, Const., sec. 451; sec. 16, art. 9, Const. 1875.

*Oscar Hochland* and *John W. Snyder* for respondent.

(1)  A municipal corporation is a public corporation created by the government. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of the government. Dillon, Mun. Corp. (4 Ed.), sec. 20.  (2)  While the Legislature may exercise such powers of government "as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred." Cooley's Const. Lim. (5 Ed.), 229; Thompson v. Lee County, 3 Wall. 330; Wells v. Bain, 75 Pa. St. 53; Cooley's Const. Lim. (6 Ed.), 231.  (3) Every people which has claimed the power to call at constitutional convention was a sovereign people—the State. Wood's Appeal, 75 Pa. St. 65; Green v. Welles, 32 Miss. 684; Wells v. Bain, 75 Pa. St. 46.  (4)  There is no assertion, nor fair implication, in our State Constitution that our city was to call other constitutional conventions than the one provided for by the Constitution. Secs. 16 and 17, art. 9, Const.  (5)  The exact method provided by our Constitution for amending our charter excludes the claim that an unexpressed and sovereign method should likewise obtain. Secs. 16 and 17, supra; State v. Tooker, 15 Mont. 11; Blanchard v. Hartwell, 131 Cal. 263.

GANTT, J.—This is an appeal from the circuit court of Jackson county, perpetually enjoining Kansas City, and the auditor, comptroller and treasurer of said city, from auditing and paying over to the election commissioners of said city the sum of two thousand dollars of the moneys belonging to and in the treasury of said city, in pursuance of an ordinance of said city numbered 26800, adopted and approved September 23, 1904,

entitled, "An ordinance providing for a special election to elect a board of thirteen freeholders to draft a charter as provided by the Constitution of Missouri," for the purpose of paying the necessary expenses of said election. The plaintiff is and was at the filing of his petition a taxpayer of said city.

The petition in substance alleged that Kansas City is a municipal corporation organized under sections 16 and 17 of article 9 of the Constitution of Missouri; that Leo E. Koehler is the duly elected, qualified and acting city auditor of said Kansas City; that Andrew E. Gallagher is the duly appointed, qualified and acting city comptroller of said city, and Albert E. Holmes is the duly elected, qualified and acting city treasurer of said city; that on the eleventh day of December, 1888, said Kansas City, pursuant to the provisions of section 16 of article 9 of the Constitution of Missouri, caused to be elected thirteen freeholders for the purpose of framing a city charter for said city; that said freeholders proceeded to formulate and draft such charter and the same was submitted to the qualified voters of said city at an election held on the eighth day of April, 1889; that such charter was duly and legally adopted at said election, receiving a four-sevenths majority of the votes cast at said election; that the said votes were duly canvassed, the result ascertained and certified and all the provisions of section 16 of article 9 of the Constitution of Missouri complied with and said charter thereupon became the charter and organic municipal law of Kansas City; that ever since the ninth of May, 1899, said charter, together with amendments thereto subsequently adopted as required by the Constitution, has been and is the charter of Kansas City; that on the twenty-second day of September, 1904, the Common Council of Kansas City passed an ordinance, No. 26800, and on the twenty-third day of September, 1904, the mayor of said city approved said ordinance, entitled "An ordinance provid-

ing for a special election to elect a board of thirteen freeholders to draft a charter as provided by the Constitution of the State of Missouri,'' which said ordinance provided among other things that on the eighth day of November, 1904, a special election should be held for the election of thirteen freeholders, each member of which said board to have been for at least five years a qualified voter of Kansas City, Missouri, and which said board should, within ninety days after the election thereof, return to the chief magistrate of Kansas City, Missouri, a draft of a charter for said city, signed by the members of said board or a majority thereof. It was further provided that the mayor should issue his proclamation for said special election, fixing the date as in said ordinance provided, and also provided for due publication of said proclamation calling said election and providing for the returns and canvassing the vote at said election under the supervision of the election commissioners of said city and the form of the ballots and the preparation thereof. The said ordinance further appropriated $2,000 out of the expense fund to meet the expenses of said election.

The petition then alleged that the said city officers were about to pay out the $2,000 thus appropriated; that said act, if consummated, would be illegal, inasmuch as Kansas City has no power to elect said freeholders, or to frame or adopt a charter as proposed in said ordinance; that the expenditure of said money would be a useless waste of the public moneys of said city to the damage of plaintiff; that he was without adequate remedy unless said officers and said city were enjoined from paying it out as proposed in said ordinance.

Upon presentation of the petition a temporary restraining order was granted and a rule to show cause entered.

Defendants filed a joint answer admitting they were officers, and that Kansas City had adopted a free-

holders' charter as alleged on the ninth day of May, 1889, and ever since that date said charter had been and still was the organic municipal law of said city. Admitted the passage of said ordinance 26800 calling a special election to elect thirteen freeholders to draft a new freeholders' charter. Admitted the appropriation of $2,000 to pay the expenses of said election, but denied that said ordinance was illegal or in excess of the powers of said city, and alleged that said city had the requisite power and legal right to adopt a charter as proposed in said ordinance.

Upon a final hearing, a perpetual injunction was granted as prayed. From that judgment, defendants appealed to this court.

Owing to the public interest involved, the appeal was advanced by this court, and the cause heard on October 25, 1904, and the judgment was reversed, opinion to be filed.

## I.

The sole and only question involved in this appeal is whether Kansas City, having in 1889 adopted a freeholders' charter under the provisions of section 16 of article 9 of the Constitution of this State, has the power to adopt a new freeholders' charter by virtue of said section 16 of article 9 of the Constitution.

The contention of the plaintiff is that when Kansas City availed itself of the right given by said section 16 of article 9 of the Constitution and adopted a freeholders' charter in 1889 it exhausted its constitutional grant, and that the only power left to it under that section is to amend said charter from time to time in accordance with said section.

The city on the other hand asserts that the power to frame and adopt a freeholders' charter under section 16 of article 9 is a continuing one and was not exhausted by the adoption of the charter of 1889, nor prohibited by the Constitution.

The question is one of first impression in this State.

Prior to the adoption of the Constitution of 1875, charters of municipal corporations in Missouri were granted by the Legislature, and it was the settled law that, unless restricted by the Constitution, the General Assembly could alter, amend, or abolish city and town charters, and the courts could not interfere with this legislative prerogative. [Copeland v. City of St. Joseph, 126 Mo. 431; St. Louis v. Russell, 9 Mo. 503; Giboney v. Cape Girardeau, 58 Mo. 141.]

The power to grant these municipal charters was nowhere expressly granted in either the Constitutions of 1820 or 1865, but was upheld on the ground that it fell within the general grant of the legislative power, which was plenary, save where restricted by some constitutional prohibition, and as there were no such inhibitions, it was construed to be an unquestioned and continuing power.

The powers of legislation conferred upon these municipal corporations to regulate and manage their local municipal affairs in conformity to ordinances adopted by themselves, were held no infringement upon the maxim that legislative power could not be delegated. [State v. Field, 17 Mo. 529; 1 Dillon, Mun. Corp., sec. 308, and cases cited; Metcalf v. City, 11 Mo. 103; State ex rel. v. Francis, 95 Mo. 49.]

Keeping in view then that the power to create a municipal corporation and to define its powers is a legislative function, and that prior to the Constitution of 1875 it was vested exclusively in the legislative branch of our State government by the general grant of legislative power, we can the more readily grasp the full meaning and scope of section 16 of article 9 of the Constitution of Missouri of 1875, which provides: "Any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, consistent with and subject to the Consti-

tution and laws of this State, by causing a board of
thirteen freeholders, who shall have been for at least
five years qualified voters thereof, to be elected by the
qualified voters of such city at any general or special
election,'' etc.  It is obvious that the power vested in
the Legislature to grant the charters of all cities was
by this section of the Constitution modified, so that
when any city of more than one hundred thousand in-
habitants elected to avail itself of this grant and framed
and adopted its own freeholders' charter, then the
power of the Legislature to govern the purely munic-
ipal affairs of such a city ceased, and by this grant the
people of the State transferred this legislative power,
because the framing of a charter and adopting it is the
exercise of legislative power, to the people of such city,
but in so doing did not change the nature or extent of
the power further than it was made a condition that
the charter which it should frame and adopt should be
consistent with and subject to the Constitution and laws
of this State.  In a word, the people of the State in
their sovereign capacity delegated a legislative power,
which theretofore had been vested in the Legislature,
to the city itself, and when the city availed itself of
this privilege then it ceased to be in the power of the
General Assembly to curtail the power thus vested in
the city.  [State ex rel. Kansas City v. Field, 99 Mo.
352; Kansas City v. Oil Company, 140 Mo. 466-7-471.]

The foregoing views have been so often stated and
reiterated that they are now the accepted law of this
State.  We repeat them here because they are the
necessary premises of the conclusion to which we have
arrived, to-wit, that the power to frame and adopt its
own charter by a city of more than one hundred thou-
sand inhabitants being clearly a legislative one, is, in
its nature, a continuing one in the absence of a restric-
tion in the Constitution which granted it.  The general
rule as to the exercise of legislative power as to char-
ters granted is that every succeeding Legislature pos-

sesses the same jurisdiction and power with respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, neither more nor less. In a homely way it is often stated that one legislature can not tie the hands of a succeeding Legislature, on the principle that it is vital to the public welfare that the Legislature should be able at all times to do whatever the varying circumstances and present exigencies touching the subject involved may require. [Newton v. Commissioners, 100 U. S. 548.] Can it make any difference in principle that the city and its inhabitants are the repository of this legislative power and not the General Assembly which prior to the Constitution of 1875 had that continuing legislative power? We think not, and the people having vested in the city and its inhabitants the power to frame and adopt a charter, we can see no reason why the exercise of it in 1889 should forever tie the hands of the city from adopting a new charter in harmony with the conditions and necessities which its growth may require, or unforeseen exigencies may demand, for the welfare of its people.

But the argument is that the power once exercised is exhausted, and there is no power in the city to frame and adopt a second or any other special freeholders' charter. This exact question arose in the State of Washington. Section 10 of article 11 of the Constitution of that State is to all intents and purposes like section 16 of article 9 of our Constitution. In Reeves v. Anderson, 13 Wash. 17, the contention was "that the power to adopt a charter for its own government (subject to the general laws of the State) has been *once* exercised by the city of Seattle, and hence that power is exhausted." Answering this the Supreme Court of the State said:

"*Second.* We think that the right to make a new charter is included within the constitutional grant of power to 'frame a charter;' that the right is a continu-

ing right. . . . We think that the mode pointed out by the latter part of section 10 of article 11 for submitting proposed amendments to a vote of the people, is not to be construed so as to exclude every other method. . . .

·*"Fourth.* We think that the power to frame a charter for themselves is a *continuing* right vested in the voters of the city, and that it does not become exhausted because once exercised. We agree with counsel for respondent that the object of the Constitutional provision is to confer upon the large cities of the State the power of local self-government (subject, as already stated, to general laws), and that this right to 'home rule is not limited at all in point of time.' "

On the other hand, a like question arose in the State of California in Blanchard v. Hartwell, 131 Cal. 263.

Section 8 of article 11 of the Constitution of California, so far as material here, is as follows: "Any city having the requisite population may frame a charter for its own government by causing a board of fifteen freeholders to be elected to prepare a charter which, in the mode specified in the section, shall be submitted to the qualified electors of the city; and if approved by a majority of them and by the Legislature, it will become the charter of said city and the organic law thereof, and supersede any existing charter and amendments thereof, and all laws inconsistent with such charter." It is then provided as to amendments: "The charter so ratified may be amended at intervals of not less than two years by proposal therefor, submitted by the legislative authority of the city to the qualified electors thereof, at a general or special election, held at least forty days after the publication of such proposals for twenty days in a daily newspaper of general circulation in such city, and ratified by at least three-fifths of the qualified electors voting thereat, and approved by the Legislature as herein provided for

the approval of the charter.'' Elsewhere the provisions of the Constitution are declared mandatory and prohibitory unless the contrary was expressly stated with reference to any provision.

In Blanchard v. Hartwell the proceeding was by injunction to enjoin the city treasurer of Los Angeles and the city from paying the expenses of a board claiming to be a board of freeholders elected to prepare a charter for said city. The Supreme Court held that as the Constitution was prohibitory and mandatory, a former freeholders' charter of said city could only be amended in the manner provided for in section 8, article 11, supra, and a second freeholders' board could not be elected in said city to frame a new charter; that the mode of amendment was exclusively commanded and all others prohibited. Stress was laid upon the provision that the charter could, under the Constitution, be amended only once in two years, and that this restriction would be vain if nevertheless the charter could be amended by framing a new charter in less time if the city should so elect; that it was obviously the purpose of the people to insure some degree of permanency and prevent frequent changes. In this case the plaintiff insists that the conclusion reached by the California court must govern, because section 16 of article 9 of our Constitution also provides that ''such charter may be amended by a proposal therefor made by the lawmaking authorities of such city, published for at least thirty days in three newspapers of largest circulation in such city, one of which shall be a newspaper printed in the German language, and accepted by three-fifths of the qualified voters of such city voting at a general or special election, and not otherwise.''

It is at once apparent that our Constitution contains no two years' or any other time limit as to the amendment of such a charter. With us the motive of the people in conferring this privilege upon such cities has been held to be to prevent ''the officious intermed-

dling with the charters of our cities without the knowledge of those whose rights are affected," and was aimed at the recognized frequent interference by the Legislature with city charters, and consequently our people thought best to confer that right upon the people who were to be affected, which, it has been declared, was entirely in accord with the genius of our institutions, being the regulation and government of local affairs within the observation and control of those who are to be affected thereby. The fear expressed by the California court that the people themselves would exercise this right too often has proven groundless, since this is the first time in fifteen years that the people of Kansas City have sought to avail themselves of the privilege.

The policy of our people was to trust the people of the city to make a change in their charter when they deemed it necessary, confident that they would not unnecessarily burden themselves with the cost of too frequent changes on the one hand, or, on the other, make frivolous changes in their organic law. The purpose was to trust them to do this, rather than some interested intermeddlers who might procure changes in their charter by imposing upon the Legislature, and without the knowledge of the people.

It is also to be observed that the California constitution is unlike ours in that it requires the approval of the Legislature, and the prohibition applies alike to the city and Legislature, whereas our Constitution commits the power to the people of the city and prohibits interference by the Legislature. [Kansas City v. Oil Co., 140 Mo. 458.]

The Supreme Court of California, confronted with a prohibitory and mandatory organic law, adopted a strict construction, but as we have seen there is no such time limit in our Constitution, nor are we called upon to adopt an excessively strict construction of this power conferred upon the people themselves, the source

of all power in our government.  To the proposition
that the grant of the power in section 16 of article 9 is
a continuing one, the majority of the California court
devote no consideration whatever, but we think it is one
of prime importance.

Such a grant has again and again been held to be
a continuing one in our municipal systems. [Farrar v.
St. Louis, 80 Mo. 379; McCormack v. Patchin, 53 Mo.
36; Skinker v. Heman, 148 Mo. 355.]

Is the city then restricted to *amending* its charter
as provided in section 16 of article 9, or can it "frame
a charter?"  The language of the Constitution is suc-
cinct and clear, but very comprehensive.  It ordains
that "*any* city" of more than one hundred thousand
inhabitants may *frame* a charter for its own govern-
ment.  It does not say any *unchartered* city of that
population, or a city having a general legislative char-
ter, or one having a special legislative charter prior to
the adoption of the Constitution, may frame its own
charter, but "*any city*" of the requisite population,
which will include one that has already framed and
adopted a charter, and it is not for the courts to import
into the Constitution a proviso that "any city" of the
requisite population *which has not already availed
itself of this grant, may* frame and adopt its own
charter.

The grant is broad and unrestricted.  But this is
not all.  This section provides further that a charter so
framed and adopted shall "*supersede any existing*
charter or amendments thereof."  Here it is seen again,
that the charter so framed will supersede any existing
charter, a freeholders' charter as well as any other.

But it is urged that the Constitution simply pro-
vides for an amendment, and does not contemplate a
new freeholders' charter after one has been framed and
adopted.  We think the section had a twofold object,
a plan for creating a new charter and a plan for amend-

ing the same. It was left to the cities of over one hundred thousand inhabitants to resort to either, as their necessities might require.

We can not bring ourselves to the view that it was intended to confine these cities to the amending plan. Each plan is fully safeguarded, but if there is any advantage in either over the other, the new charter in the initiative steps is more carefully guarded.

It will scarcely be insisted that the power to amend the charter is exhausted by one amendment, but the Constitution does not literally say that the charter may be amended more than once, but as it is a legislative power it is continuous, and by the same token the power to frame or create a freeholders' charter is also a continuing one, in the absence of a constitutional prohibition, and there is none unless we imply one, which we can not do.

We think that the power conferred by section 16 of article 9 of the Constitution of Missouri upon cities having more than one hundred thousand inhabitants is a legislative power conferred directly upon such city and its people, and such being its nature, it is a continuing one, in the absence of a constitutional prohibition; that there is no such prohibition in the Constitution; that the mere fact that such a character may be amended in the manner prescribed in this section of itself does not amount to a prohibition to frame and adopt a new charter, but that the section has a twofold object, and points out a method for the obtaining of each without destroying the other.

The circuit court erred in enjoining the officers of the city from obeying the ordinance providing for an election of thirteen freeholders to frame a new charter. The judgment of the circuit court was reversed prior to the election in 1904, but for want of time this opinion could not be formulated and it is filed now for then.

The judgment of the circuit court is reversed.

*Brace, C. J., Marshall, Burgess, Valliant* and *Fox, JJ.,* concur; *Lamm, J.,* not having been a member of the court at the time of the argument and submission, takes no part in the decision.