STATE *ex rel.* WEST, *Atty. Gen.*, v. LEDBETTER.

No. 175. Opinion Filed September 16, 1908.

(97 Pac. 834.)

1. MUNICIPAL CORPORATIONS—Cities of the First Class—Status Effected by Statehood. A city of the second class under the laws in force in the Indian Territory prior to the admission of the state, having a population of more than 2,500, became upon the admission of the state, by virtue of section 10 of the schedule to the Constitution, a city of the first class under the laws extended in force in the state.

2. SAME—Statutes Construed. The act of the Legislature, approved February 20, 1908 (Sess. Laws 1907-08, p. 183, c. 12), entitled "An act amending sections 1, 5, 6, of article 1, chapter 14 of an act providing for the incorporation and government of cities of the first class, of the Statutes of Oklahoma of 1893; amending

section 1, of article 1, of chapter 6, of the Session Laws of Oklahoma of 1897, entitled 'An act amending sections 7 and 8 of article 1, chapter 14, of an act entitled "An act providing for the incorporation and government of cities of the first class, Statutes of Oklahoma, 1893"'; providing for the incorporation and government of cities of the first class, and declaring an emergency," and the provisions thereof do not apply to cities that were continued or became by section 10 of the schedule to the Constitution cities of the first class under the laws extended in force in the state.

(Syllabus by the Court.)

Action by the state, on the relation of Charles J. West, Attorney General, to oust from office J. F. Ledbetter. Judgment for plaintiff.

This is an original action by the state *ex rel.* Charles J. West, Attorney General, to oust from the office of marshal of the city of Muskogee one J. F. Ledbetter, and to have declared by judgment of the court that one Charles Kimsey is entitled to said office. There is no controversy about the facts in the case, and it is submitted upon an agreed statement.

Muskogee was on the first Tuesday in April, 1907, under chapter 29 of Mansfield's Digest of the Statutes of Arkansas, then in force in the Indian Territory, a city of the second class. In the Indian Territory on that date a general election was held in said city for the purpose of electing city officers, and one Charles Kimsey was elected city marshal at said election. He thereupon qualified, and continued to hold said office until the 6th day of April, 1908. On the 16th day of December, 1907, the city council of Muskogee adopted a resolution directing the mayor and recorder of the city to petition the Governor to issue his proclamation declaring the city of Muskogee a city of the first class. The Governor on December 20, 1907, issued his proclamation declaring said city a city of the first class, and the city council on December 23, 1907, proceeded to fill by appointment certain offices of the city then vacant. Numerous other proceedings of the council are set out in the agreed statement of facts, but it is not necessary to repeat them here. On the 20th day of February, 1908, an act pro-

viding for the incorporation of cities, towns, and villages having a population of 2,000 or more, not cities of the first class on November 16, 1907, was passed by the Legislature and approved by the Governor. Sess. Laws 1907-08, p. 183, c. 12. Soon thereafter, in accordance with the provisions of that act, a petition containing more than 35 per cent. of the qualified electors residing within the territorial limits of the city of Muskogee was filed with the Governor, praying for an election at which the question whether Muskogee should become a city of the first class should be submitted to the legal voters of that city, and also for the election of city officers as provided by said act. The Governor issued his proclamation calling the election as prayed for by the petitioners, and on the 24th day of March, 1908, the election was held. The majority of the votes cast were in favor of the city of Muskogee becoming a city of the first class, and defendant was elected city marshal thereof. The result of the vote was certified to the Governor, and he issued his proclamation declaring the city of Muskogee to be a city of the first class. Defendant thereupon, on the 6th day of April, 1908, took the oath of office, and entered upon the discharge of his duties as city marshal, and was discharging the same at the commencement of this suit. Prior to the beginning of this action, demand was made upon him to vacate the office and surrender the same to Charles Kimsey, which he refused to do. It is admitted that defendant is qualified under the law to hold said office.

*Charles West, Atty. Gen., J. E. Wyand,* and *W. F. Schuermeyer,* for plaintiff.

*Owen & Slone* and *Bailey & Kistler,* for defendant.

HAYES, J. (after stating the facts as above). The propositions presented by this case can best be disposed of by answering the two following questions: First. What did the status of cities on the Indian Territory side of the state that were cities of the second class under the laws in force in that territory with more than 2,500 inhabitants prior to the admission of the state into the

Union become upon the admission of the state? Second. What effect, if any, has subsequent legislation had upon the status of such cities and their officers?

1. By an act of Congress approved June 28, 1898 (30 Stat. 495, c. 517), entitled "An act for the protection of the people of the Indian Territory, and for other purposes," chapter 29 of Mansfield's Digest of the Statutes of Arkansas, on corporations, was put in force in the Indian Territory. Under the provisions of this chapter and of said act of Congress, there existed at the time of the admission of the state into the Union three classes of municipal corporations in the Indian Territory, to wit: Cities of the first class, comprising cities with a population exceeding 5,000; cities of the second class, comprising cities with a population of less than 5,000, but not less than 2,500; and incorporated towns comprising all towns with more than 200 population, but less than 2,500. When this law was extended in force in the Indian Territory, Muskogee was incorporated as a municipal corporation of the second class, and, although her population far exceeded 5,000 at the time of the admission of the state, the city had never organized as a city of the first class. In the territory of Oklahoma municipal corporations were divided into two classes: Those cities having a population of more than 2,500 were classed as cities of the first class. Those having a population of less than 2,500 were classed towns, cities, or villages. The systems of municipal corporations in the two territories were therefore unlike. The cities of Oklahoma Territory comprising cities of the first class corresponded with the cities of the Indian Territory comprising both the cities of the first class and cities of the second class. The incorporated towns of the Indian Territory as a class corresponded very much to incorporated cities, towns, and villages in Oklahoma Territory. No provision was made in the Enabling Act or in the Constitution for extending in force in the state laws under which the municipal corporations of the Indian Territory were created, organized, and governed, but by section 2 of the Schedule to the Constitution (Bunn's Const. § 451) all the laws

in force in the territory of Oklahoma at the time of the admission of the state into the Union which were not repugnant to the Constitution, and which were not locally inapplicable, were extended in force in the state.

Of the laws that were thus extended in force was section 346 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903, which reads:

"All cities, towns, villages or communities of people residing in compact form in this territory, having a population of over twenty-five hundred inhabitants, as shown by the last census taken thereof, and residing upon land platted into lots and blocks (shall), upon taking effect of this act, become municipal corporations and be governed by the provisions hereof, upon compliance with the provisions of this act. And all cities, towns, villages or communities, of people, in this territory that shall hereafter attain to such population, shall, upon such population being ascertained by the corporate authorities thereof, and in case they are without corporate authorities then by persons they may select for that purpose, and certified to the Governor of the territory, be by him declared, by proclamation, to be cities of the first class and from and after such proclamation shall be governed by the provisions of this act."

Section 347 of the same Statutes defines the powers of cities of the first class. Sections 350 and 352 provide a procedure for organizing all such proposed cities. The municipal corporations of the Indian Territory prior to the admission of the state into the Union were agencies of the government of the United States, created by Congress under its plenary power to govern the territories in any manner not forbidden by the federal Constitution. for the purpose of permitting the people of those cities and towns in a measure to control their local affairs. Except as to those matters to govern which power was delegated to said municipal corporations, the administration of the affairs of the Indian Territory was governed exclusively by congressional legislation, and, while no form of organized territorial government existed in the Indian Territory in the sense that the term "organized territory" is generally used, a form of territorial government administered by

Congress by means of direct legislation for said territory did exist, and said municipal corporations formed a part of said government. Upon the admission of the state into the Union, the form of government theretofore existing in the Indian Territory ceased to exist, and the laws in force in that territory under which Muskogee held. its charter and exercised its municipal powers became inoperative; but it is not necessary for us to determine whether Muskogee, as a municipal corporation, would have ceased to exist at said time if no provision had been made in the Constitution continuing its corporate existence, for by section 10 of the Schedule to the Constitution it is provided that:

"Until otherwise provided by law, incorporated cities and towns, heretofore incorporated under the laws in force in the territory of Oklahoma or in the Indian Territory, shall continue their corporate existence under the laws extended in force in the state, and all officers of such muncipal corporations at the time of the admission of the state into the Union shall perform the duties of their respective offices under the laws extended in force in the state, until their successors are elected and qualified in the manner that is or may be provided by law: Provided, that all valid ordinances now in force in such incorporated cities and towns shall continue in force until altered, amended or repealed."

Section 346 of Wilson's Revised and Annotated Statutes, *supra,* was originally passed by the Legislature of the Territory of Oklahoma for the purpose of governing municipal corporations of said territory; but this section and the other sections of the same chapter, extended in force in the state upon the admission of the state, applied to cities, towns and villages in that portion of the state theretofore known as the Indian Territory, in so far as the same were applicable. Said section provides, in effect, that all cities, towns, and villages having a population of over 2,500 shall be cities of the first class. It is true, as contended by defendant, that said section provides that any city, town, or village shall become a municipal corporation governed by the provisions of said section and the other provisions of said act upon such. city, town, or village complying with the provisions of the act, but that portion

of the section requiring a compliance with the act was made to apply to unorganized municipal governments. The provisions with which said section requires such city, town, or village to comply are those prescribing a procedure for an election at which it may be determined whether any such city shall be organized into a city of the first class for the election of officers for the purpose of organization under the act. This portion of the section was inapplicable to the city of Muskogee and other cities and towns on the Indian Territory side of the state similarly situated, for the reason that upon the admission of the state, and at the time this section of the statute became effective as to said cities and towns, the Constitution created them municipal corporations under said law, and by the same section of the schedule to the Constitution supplied officers for such corporations, thereby rendering unnecessary an election for the purpose of electing such officers for the purpose of organizing a city government; but that portion of said section which declares how a city of over 2,500 inhabitants shall be governed and the powers it shall have was applicable to the city of Muskogee, and by virtue of the terms of the schedule and of said statutes extended in force in the state it became upon the admission of the state into the Union a city of the first class.

We cannot agree with the contention of able counsel for defendant that Muskogee continued to exist, after the admission of the state as a city of the second class, governed by the laws extended in force, for the reason there existed in the laws extended in force no provisions for cities of the second class, and the corporate existence of said cities of the second class continued after the admission of the state, under the laws extended in force, and not under the laws theretofore in force in the Indian Territory. No law exists in the state for the governing of cities of the second class, or defining their powers. The purpose of the schedule to the Constitution and of its various provisions is clearly indicated in the language of the preamble thereto, which reads: "In order that no inconvenience may arise by rea-

son. of a change in the forms of government now existing in the Indian Territory and in the Territory of Oklahoma, it is hereby declared as follows:" Then follow the various provisions of the schedule, including section 10, *supra*. It was the intention of the constitutional convention by the provisions of the schedule to provide for the transition of the forms of government existing in the Indian Territory and the territory of Oklahoma at the time of the admission of the state into the Union into a state government with the least confusion and complication possible. No provision was made in the Constitution nor in the election ordinance passed by the constitutional convention for the election of officers of the municipal governments at the time of the election to vote upon the Constitution and to elect state, county, and township officers. No doubt section 10 of the schedule was incorporated in the schedule with the view and purpose of preventing any interregnum in the administration of the municipal governments in the state, and to prevent confusion arising from doubt as to the status of such municipal corporations theretofore existing in that part of the state formerly Indian Territory, and to prevent any necessity of reorganization after the admission of the state.

The construction contended for by defendant is not suggested by the language of the provision of the Constitution, nor does it aid the accomplishment of the evident purpose intended by the constitutional convention in adopting such provision. That portion of the section providing that all officers of such municipal corporations at the time of the admission of the state shall perform the duties of their respective offices under the laws extended in force in the state until their successors are elected in the manner that is or may be provided by law was before this court for construction in *State ex rel. Kline v. Bridges, Mayor,* 20 Okla. 533, 94 Pac. 1065, in which case it was held that the officers of such municipal corporations in the Indian Territory at the time of the admission of the state became by appointment, affected by this provision of the Constitution, officers of such municipal corporations after the admission of the state. The rule announced

by this court in that case as to the election of the successors of the officers of the city of Chickasha applies to the city of Muskogee.

The suggestion of counsel for defendant that the construction here given to section 10, *supra,* is militated against by the fact .that cities of the second class in the Indian Territory had some officers that did not exist in cities of the first class of the territory of Oklahoma, and, on the other hand, that cities of the first class of the territory of Oklahoma had some officers that did not exist in cities of the second class in the Indian Territory, is without persuasive force. If there existed any officer in any corporation in the Indian Territory to which there existed no corresponding officer under the laws extended in force, such officer upon the admission of the state would be without duties and in fact without office, for the reason he continued as an officer and discharged the duties of his office, not by virtue of any law formerly in force in the Indian Territory, but by virtue of the Constitution and under the provisions of the law extended in force, and, if the law extended in force provides any office and prescribes the duties of the occupant of such office which did not exist in the municipal corporations in the Indian Territory, after the admission of the state such office was vacant, but under section 356 of Wilson's Revised and Annotated Statutes of Oklahoma all vacancies in offices may be filled by appointment of the council. Upon the admission of the state, therefore, if any such municipal corporation was without a full corps of officers, it nevertheless began with sufficient officers under the law extended in force to fill all vacancies and dispatch all the affairs of the corporation, for all of such cities had councils. Upon the admission of the state, Muskogee was without a police judge, but the council of the city had power to fill the vacancy by appointment, and did so.

It is argued that the construction here given to section 10 of the schedule as to its effect upon municipal corporations of the Indian Territory situated similarly to Muskogee cannot be correct, for the reason that, although it had not been done in Muskogee,

such cities had the power by ordinance to provide for ten alder-men, instead of eight, as is provided by the laws extended in force in the state. This contingency was provided for by that clause of section 10 of the Schedule to the Constitution which reads: " * * * Provided that all valid ordinances now in force in such incorporated cities and towns shall continue in force until altered, amended or repealed." If such city by virtue of a valid ordinance had a council of ten, instead of eight, such council might continue to act until such ordinance was repealed by the proper legislative body, or provision made for the election of the successors of the members thereof. The council of such city, although different in number, would have the same power and perform the same duties as councils of other cities of the same class.

Under the rule laid down by the court in *State ex rel. Kline v. Bridges, supra,* Charles Kimsey, marshal of the city of Muskogee as a municipal corporation prior to statehood, became the marshal of the city of Muskogee as a municipal corporation after the admission of the state, and will continue as such until his successor is elected in the manner that is or may be provided by law.

On February 8, 1908, an act entitled "An act to legalize the incorporation of all cities, towns and villages in the state of Oklahoma, and legalize the incorporation of all cities proclaimed to be cities of the first class under the laws of the state of Oklahoma, by the Governor thereof, where the laws relating to the incorporation of such cities, towns and villages have not been fully and strictly complied with, and to make legal, valid and binding all ordinances passed by the mayors and councils of such cities, towns and villages not in conflict with the Constitution of the United States or the Constitution and laws of the State of Oklahoma, where from any cause the requirements of the law in the passage of such ordinance or ordinances have not been fully and strictly complied with, and declaring an emergency," was approved by the Governor. The provisions of this act (Sess. Laws 1907-08, p. 188, c. 12) attempt to validate the incorporation of

all cities, together with additions thereto, in all instances where
the laws for the incorporation of such cities or additions had not
been fully, completely, and strictly complied with, and also to
validate the acts of the mayors and councils of such cities, towns,
and villages; but by section 3 of the act it is provided that said
act shall not apply to cities, towns, or villages where the popula-
tion as shown by the federal census of 1907 is in excess of 6,000
inhabitants. Said act and none of its provisions therefore apply
to the city of Muskogee, for it is agreed that by said census the
said city of Muskogee has a population of over 14,000 inhabitants.

On February 20, 1908, an act entitled "An act amending sec-
tions 1, 5, 6 of article 1, chapter 14, of an act providing for the
incorporation and government of cities of the first class, of the
Statutes of Oklahoma of 1893; amending section 1, of article 1,
of chapter 6, of the Session Law of Oklahoma of 1897, entitled
'An act amending sections 7 and 8 of article 1, of chapter 14,
of an act entitled "An act providing for the incorporation and gov-
ernment of cities of the first class, Statutes of Oklahoma, 1893" ':
providing for the incorporation and government of cities of the
first class, and declaring an emergency," was approved by the
Governor. By section 1 of this act (Sess. Laws 1907-08, p. 183,
c. 12) it is provided that "all cities, towns, and villages and com-
munities of people residing in compact form in this state, having
a population of twenty hundred inhabitants or more, as shown by
the special federal census of Oklahoma and Indian Territory, of
July 1, 1907, and residing upon land platted into lots and blocks
and which were not cities of the first class on November 16, 1907,
may become cities of the first class in the manner hereinafter
provided; and all cities, towns, villages and communities of peo-
ple in this state that shall thereafter attain to such population
as shown by the federal census, or other taken under the laws of this
state, may become cities of the first class in like manner; provided,
that cities and towns in that part of the state of Oklahoma which
was formerly Indian Territory which were, or purported to be, on

November 16, 1907, cities of the first class under the laws in force in said territory, by virtue of an order, judgment or decree of any United States court in said territory be, and the same are hereby, declared to be cities of the first class under the laws of this state." Section 2 of the act provides how an election may be called at which it may be ascertained whether the inhabitants of any such proposed city desired that the same be organized into a city of the first class. Section 3 prescribes the form of the ballot to be used at such election. Section 4 provides that at such election the qualified electors within any such city, town, or village may vote for the officers of the same, and provides, further, that any city of the state, not a city of the first class at the time of the adoption of the Constitution and admission of the state into the Union, shall comply with this act, except where the incorporation of such city has been validated by act of the Legislature of the state of Oklahoma. Section 5 provides a board of canvassers for such election, and prescribes how the vote shall be canvassed and the result certified to the Governor, who, if a majority of the votes so cast are in favor of the proposition to incorporate any such city as a city of the first class, shall issue a proclamation within 20 days, declaring such city to be a city of the first class. Some of the provisions of this act are not without ambiguity, but a careful examination of the same convinces us that it was the intention of the Legislature, as expressed in the terms of the act, to provide a procedure under which all cities and towns at the time of the admission of the state having a population of 2,000 or more, or that might thereafter attain such population, may be incorporated as cities of the first class, but we are unable to find anything in said act that would warrant the construction that it was intended by said act to require cities that are already cities of the first class to comply with the conditions of such act. The election of officers provided for in the act to be held at the time of the special election, held for the purpose of ascertaining whether such city shall be incor-

porated as a city of the first class, is for the purpose of providing officers with which to organize such municipal corporation, and not for the purpose of electing the successors of officers of cities of the first class already incorporated and organized.

The city of Muskogee, prior to the passage of said act, was a city of the first class. There was nothing further for it to do in order to be incorporated and organized as such. Under the provisions of the Constitution and the laws extended in force in the state, it became a city of the first class organized with officers sufficient to administer its government, and the election held in Muskogee on the 24th day of March, 1908, at which defendant claims to have been elected, was without authority of law, and, while defendant is *de facto* marshal of the city of Muskogee, he is not such *de jure*, and the plaintiff in this case is entitled to the relief prayed for.

All the Justices concur.