THE ATTORNEY GENERAL HAS RECEIVED YOUR REQUEST FOR AN OFFICIAL OPINION ASKING IN EFFECT:
 1. DOES 11 O.S. 10-112 (1981) REQUIREMENT THAT A CITY MANAGER RESIDE IN THE CITY OF APPOINTMENT DURING THE TENURE OF THE CITY MANAGER'S OFFICE CONFLICT WITH 11 O.S. 22-127 (1981), WHICH PERMITS A MUNICIPAL GOVERNING BODY TO DECIDE WHICH APPOINTED OFFICERS AND EMPLOYEES MUST RESIDE WITHIN THE CITY?
 2. IF 11 O.S. 10-112 PREVAILS, DOES THIS STATUTE VIOLATE THE HOME RULE PROVISIONS OF THE OKLAHOMA CONSTITUTION BY DEPRIVING THE MUNICIPAL GOVERNING BODY OF THE RIGHT TO DETERMINE ITS RESIDENCY REQUIREMENTS?
TITLE 11 OF THE OKLAHOMA STATUTES EMBODIES THE OKLAHOMA MUNICIPAL CODE. TITLE 11 RECOGNIZES FIVE DISTINCT FORMS OF MUNICIPAL GOVERNMENT IN OKLAHOMA, FOUR FORMATS GOVERNED ENTIRELY BY STATUTORY PROMULGATIONS AND A FIFTH TYPE GOVERNED, AT LEAST IN PART, BY A UNIQUE MUNICIPAL CHARTER. ARTICLES NINE THROUGH TWELVE OUTLINE SPECIFIC COMMANDS ADDRESSED RESPECTIVELY TO THE FOUR DIFFERENT TYPES OF STATUTORY MUNICIPAL GOVERNMENTS.
ON THE SURFACE THE CONFLICT APPEARS TO BE THAT TITLE 11 O.S. 22-127, PROVIDES MUNICIPAL GOVERNING BODIES WITH THE AUTHORITY TO DESIGNATE WHICH APPOINTED OFFICERS AND EMPLOYEES MUST RESIDE WITHIN THE CITY, WHILE 10-112 REQUIRES CITY MANAGERS TO LIVE WITHIN THE CITY DURING THEIR TERM OF OFFICE. YOU ASK WHETHER THESE TWO PROVISIONS ARE IN CONFLICT.
THE PRIMARY PURPOSE OF STATUTORY CONSTRUCTION IS TO ASCERTAIN THE INTENT OF THE LEGISLATURE, AND IF POSSIBLE, TO EFFECTUATE THAT INTENT. JACKSON V. INDEPENDENT SCHOOL DIST. NO. 16 OF PAYNE CO., 648 P.2D 26 (OKLA. 1982). STATUTORY PROVISIONS SHOULD BE READ TOGETHER AS A COMPOSITE WHOLE AND HARMONIZED SO AS TO GIVE EFFECT TO EACH PROVISION TO AVOID A CONFLICT. EASON OIL CO. V. CORPORATION COMMISSION, 535 P.2D 283 (OKLA. 1975). 11 O.S. 22-127 ET. SEQ., IS A BROAD ARTICLE WHICH ADDRESSES THE GENERAL POWERS OF MUNICIPALITIES. SECTION 127, WITH CERTAIN QUALIFICATIONS, PERMITS A MUNICIPAL GOVERNING BODY TO ENACT ORDINANCES DESIGNATING WHICH APPOINTED OFFICERS AND EMPLOYEES MUST RESIDE WITHIN THE CITY LIMITS.
A COUNCIL-MANAGER FORM OF GOVERNMENT AS FOUND IN ARTICLE 10101 ET SEA., PROVIDES FOR A CITY MANAGER TO BE APPOINTED BY THE CITY COUNCIL. THE CITY MANAGER NEED NOT BE A RESIDENT OF THE CITY AT THE TIME OF HIS OR HER APPOINTMENT BUT MUST THEREAFTER RESIDE WITH THE CITY DURING THE TERM OF OFFICE. BECAUSE 11 O.S. 10-112 (1981) PROVIDES SOLELY FOR THE RESIDENCY OF THE CITY MANAGER IN A COUNCIL-MANAGER FORM OF GOVERNMENT, IT IS NOT IN CONFLICT WITH THE BROADER PROVISION OF ARTICLE 22-127.
A FIFTH TYPE OF MUNICIPAL GOVERNMENT IS CALLED A CHARTER MUNICIPALITY. A DESCRIPTION OF A CHARTER MUNICIPALITY IS FOUND IN TITLE 11 O.S. 13-101 ET. SEQ. THIS FORM OF GOVERNMENT IS NOT A STATUTORILY CREATED FORM BUT RATHER, ITS GENESIS IS FOUND IN ARTICLE 183(A) OF THE OKLAHOMA CONSTITUTION. TITLE 11 O.S. 1-102 DEFINES A CHARTER MUNICIPALITY OR MUNICIPALITY GOVERNED BY A CHARTER AS:
"ANY MUNICIPALITY WHICH HAS ADOPTED A CHARTER IN ACCORDANCE WITH THE PROVISIONS OF THE CONSTITUTION AND LAWS OF OKLAHOMA AND, AT THE TIME OF ADOPTION OF THE CHARTER HAD A POPULATION OF TWO THOUSAND (2,000) OR MORE. ONCE A MUNICIPAL CHARTER HAS BEEN ADOPTED AND APPROVED, IT BECOMES THE ORGANIC LAW OF THE MUNICIPALITY IN ALL MATTERS PERTAINING TO THE — — LOCAL GOVERNMENT OF THE MUNICIPALITY AND PREVAILS OVER STATE LAW ON MATTERS RELATING TO PURELY MUNICIPAL CONCERNS."
YOUR SECOND QUESTION ESSENTIALLY RAISES THE ISSUE OF WHETHER A "HOME RULE" OR CHARTER MUNICIPALITY HAS THE AUTHORITY TO ENACT ITS OWN LAWS WHICH SUPERSEDE THE STATE LAW. AS THE ABOVE CITED DEFINITION OF A CHARTER MUNICIPALITY REVEALS, THE LAWS OF A CHARTER MUNICIPALITY DO SUPERSEDE STATE LAWS ON MATTERS RELATING TO MUNICIPAL AFFAIRS.
THE LAW MAKING AUTHORITY, OF A CHARTER CITY HAS BEEN FURTHER DEFINED BY CASE LAW. THE OKLAHOMA SUPREME COURT IN VINSON V. MEDLEV, 737 P.2D 932, 936 (OKLA. 1987), STATED, "A CITY CHARTER SUPERSEDES STATE LAW ONLY WHEN IT AFFECTS A SUBJECT THAT IS DEEMED TO LIE EXCLUSIVELY WITHIN MUNICIPAL CONCERN." SEE ALSO, FARMER V. CITY OF SAPULPA, 645 P.2D 518 (OKLA. 1982). FOR A RESOLUTION OF A CONFLICT BETWEEN STATE LAW AND A CHARTER PROVISION IT MUST BE DETERMINED WHETHER THE LAW IS ONE OF GENERAL STATE IMPORTANCE OR IS STRICTLY OF MUNICIPAL CONCERN. OLIVER V. CITY OF TULSA, 645 P.2D 607, 609 (OKLA. 1982); LACKEY V. STATE, 116 P. 913 (OKLA. 1911).
IN U.S. ELEVATOR CORPORATION V. CITY OF TULSA, 610 P.2D 791 (OKLA. 1980), THE OKLAHOMA SUPREME COURT DISCUSSED THE SUBJECT OF HOW TO DETERMINE WHETHER A LAW IS PURELY A MUNICIPAL AFFAIR. SEE ALSO, MERRILL, "CONSTITUTIONAL HOME RULE FOR CITIES OKLAHOMA VERSION," 5 OKL. L. REV. 139 (1952). THE GUIDELINE PROVIDED IN U.S. ELEVATOR IS TO DETERMINE WHETHER THE LAW IN QUESTION HAS A "WIDER PUBLIC INTEREST." USING THIS STANDARD, IT APPEARS THAT THE RESIDENCY OF A CITY MANAGER IS A MATTER OF MUNICIPAL CONCERN AND DOES NOT EFFECT A "WIDER PUBLIC INTEREST." IF THE CHARTER, OR ORDINANCE, OF A CHARTER CITY ADDRESSES THE SUBJECT OF A RESIDENCY REQUIREMENT FOR THE CITY MANAGER, THAT "HOME RULE" LAW WILL SUPERSEDE THE STATE STATUTE IF A CONFLICT BETWEEN THE TWO EXISTS.
IT IS THEREFORE, THE OFFICIAL OPINION OF THE ATTORNEY GENERAL THAT TITLE 11 O.S. 10-112, IS NOT IN CONFLICT WITH 11 O.S. 22-127. THE CITY MANAGER OF A COUNCIL-MANAGER FORM OF GOVERNMENT REGULATED BY 11 O.S. 10-112, MUST RESIDE IN THE CITY DURING THE TENURE OF OFFICE. FURTHER, IF THE CHARTER OF A "HOME RULE" CITY CONTAINS A PROVISION WHICH ADDRESSES A SUBJECT OF STRICTLY MUNICIPAL CONCERN, THE CHARTER PROVISION WILL PREVAIL OVER STATE LAW.
(RACHEL LAWRENCE-MOR)